# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Thomas W. Lyons, Inc.,                                       Civil No. 07-4227 (DWF/SRN)
f/k/a Gulf Atlantic Hearing
Aid Centers, Inc.,

                Plaintiff,

                                                   **MEMORANDUM**
v.                                                          **OPINION AND ORDER**

Sonus-USA, Inc.,

                Defendant and Counterclaim Plaintiff,

v.

Thomas W. Lyons and Thomas W. Lyons, Inc.,
f/k/a Gulf Atlantic Hearing Aid Centers, Inc., and
Thomas W. Lyons,

                Counterclaim Defendants.

---

Michael R. Riemenschneider, Esq., and William H. Cantwell, II, Esq., O'Brien, Riemenschneider, Wattwood & Cantwell, PA, and Sarah E. Bushnell, Esq., and Timothy D. Kelly, Esq., Kelly & Berens, PA, counsel for Plaintiff and Counterclaim Defendants.

Emily E. Duke, Esq., and Jennifer A. Kitchak, Esq., Fredrikson & Byron, PA, counsel for Defendant and Counterclaim Plaintiff.

---

      This matter is before the Court on a Motion for Summary Judgment brought by

Sonus-USA, Inc. ("Sonus").  Also before the Court is a Motion to Strike bought by

Thomas W. Lyons and Thomas W. Lyons, Inc., f/k/a Gulf Atlantic Hearing Aid Centers,

Inc.[1]  For the reasons stated below, the Court grants the summary judgment motion and

grants in part and denies in part the motion to strike.

## BACKGROUND

Sonus is a Washington corporation with its principal place of business in

Minnesota.  It operates a hearing healthcare network of retail locations that provides

Siemens products to hearing-impaired consumers.

Gulf Atlantic was a Florida corporation formed to operate a hearing aid sales and

service business in Florida.  Lyons owned and operated Gulf Atlantic.  Gulf Atlantic

consisted of seven clinics ("the Gulf Atlantic clinics") that sold Starkey's Nu-Ear line of

hearing aids.  In 2001, another hearing aid business that sold a different line of Starkey

products began competing with Gulf Atlantic for customers.[2]  The competition caused

Gulf Atlantic to suffer financially, increase its advertising costs, hold open houses, and

engage in pricing-wars with the other business.  The parties dispute whether this

competition was the motivation behind Lyons' decision to sell Gulf Atlantic to Sonus.

In early 2004, Sonus, through Scott Klein, contacted Lyons about purchasing Gulf

Atlantic.  Sonus, which did not have retail experience in the hearing aid business, wanted

---

[1]      The Court will refer to Thomas W. Lyons, as an individual, as "Lyons," and
Thomas W. Lyons, Inc., f/k/a Gulf Atlantic Hearing Aid Centers, Inc., as "Gulf Atlantic."

[2]      In 2004, Starkey initiated an arbitration proceeding against Gulf Atlantic for
past-due invoices, and Gulf Atlantic filed a counterclaim related to Starkey's sales of
products to the competing hearing aid business.  The arbitration concluded sometime in
2006.  There is nothing in the record about the arbitration outcome because Lyons has
refused to answer any questions about it.

an earn-out provision tied to any purchase agreement to ensure that Lyons would continue to manage the Gulf Atlantic clinics for a period of time.  Sonus initially proposed a three-year earn-out provision.  Although Lyons was reluctant to agree to any earn-out provision, he eventually agreed to a one-year earn-out provision.  The parties disagree about representations Klein made to Lyons before the Purchase Agreement was signed concerning the amount of control Lyons would retain over the Gulf Atlantic stores and the amount Sonus would charge the Gulf Atlantic stores for the Siemens goods that they sold.

The parties' lawyers jointly drafted the Purchase Agreement, which is governed by Minnesota law.  On June 25, 2004, Gulf Atlantic and Sonus entered into an Asset Purchase Agreement (the "Purchase Agreement") whereby Sonus agreed to purchase certain of Gulf Atlantic's assets, including the Gulf Atlantic clinics, for $3 million.  The Purchase Agreement also provided that Gulf Atlantic could earn an additional $1 million above the purchase price if certain conditions were met under a three-prong, one-year "earn-out provision."

The earn-out provision provides:

Earn-Out.  The balance of the Purchase Price shall be calculated and paid in accordance with the provisions of this Section 3(c).  [Sonus] shall pay to [Gulf Atlantic] additional $1,000,000 if the following conditions are met:

(i)  the Net Revenue of the Business for the period commencing on the Closing Date and ending on the day immediately preceding the one-year anniversary of such date (the "Earn-Out Period") is equal to or greater than $3,500,000 (the "Net Revenue Target");

(ii)  the EBITDA[3] of the Business for the Earn-Out Period exceeds is equal to or greater than $560,000 (the "EBITDA Target"); and

(iii)  [Lyons] remains continuously employed by Buyer from the Closing Date until the last day of the Earn-Out Period.

. . . .

In determining EBITDA, EBITDA shall . . . (ii) not include any gains, losses or profits realized from the sale of any assets other than in ordinary course of business; . . .

For purposes of this Section 3(c), the term "Business" means the business acquired from Seller pursuant to this Agreement that is conducted exclusively at the [Gulf Atlantic retail locations identified in Exhibit A to the Purchase Agreement] during the Earn-Out Period. . . .

(Affidavit of Jennifer Kitchak ("Kitchak Aff"), Ex. 14 at ¶ 3(c).)  Paragraph 3(c) of the

Purchase Agreement required Sonus to provide Lyons with earn-out calculations at the

end of the earn-out period, and the Purchase Agreement gave Lyons ten days to contest

Sonus' calculations in writing.  (*Id*.)  The Purchase Agreement also included the

following integration clause:

This Agreement contains the entire agreement of the parties concerning the subject matter hereof, and supersedes all prior communications, understandings and agreements.  No representations, promises or agreements, oral or otherwise, not contained herein shall be of any force or effect.

(*Id*., Ex. 14 at ¶ 13.)

The Purchase Agreement contemplated that Lyons and Sonus would enter into an

Employment Agreement, and in fact, the parties agree that the Employment Agreement

---

[3]      EBITDA stands for earnings before interest, taxes, depreciation, and amortization.

has been made part of the Purchase Agreement.  The Employment Agreement between

Lyons and Sonus identifies Lyons as the full-time "general manager" of the "Business

Locations" subject to Sonus' "control, rules, regulations, policies and programs."  (*Id.*,

Ex. 15 at ¶ 1.2.)  The "Business Locations" are defined as the Gulf Atlantic clinics.

Under the Employment Agreement, Lyons' salary for the year was $52,000.  (*Id.*, Ex. 15

at ¶ 2.1.)  In addition, the Employment Agreement also contained an integration clause:

> This Agreement constitutes the entire understanding of Employer and
> Employee as to its subject matter, supersedes any prior agreement or
> arrangement relative to its subject matter, whether oral or written, and no
> modification, supplement, or amendment of any provision hereof shall be
> valid unless made in writing and signed by both parties.

(*Id.*, Ex. 15 at ¶ 6.1.)

After the Purchase Agreement was signed, Lyons became Sonus' general manager

for the Gulf Atlantic clinics.  He retained many of the same policies that were in place

before the purchase, including the commission plan, the use of open houses, advertising,

what products to sell, and the price of the products.  The parties disagree, however, about

the amount of the control Lyons ultimately had over certain aspects of the Gulf Atlantic

stores.  Specifically, the parties have disputes, among other things, about the costs

associated with advertising, direct mail, and commissions for certain open house events.

The parties also disagree about whether Sonus mislead Lyons into believing that Gulf

Atlantic was on target to meet the EBITDA target.

In late December 2004, Lyons also entered into a Commission Agreement with

Sonus, under which Sonus agreed to pay Lyons a commission if he helped Sonus acquire

certain business assets.  (*Id.*, Ex. 42.)  The Commission Agreement provided that

"[n]othing herein contained shall in any way be construed to restrict, alter or otherwise amend the terms of the Employment Agreement, dated June 24, 2004 and the Asset Purchase Agreement, dated June 25, 2004."  (*Id.*, Ex. 42 at ¶ 4.1.)  The parties dispute whether these additional duties interfered with Lyons' ability to help the Gulf Atlantic clinics reach the EBITDA target.

In June 2005 at the close of the one-year earn-out period, Sonus informed Lyons that the Gulf Atlantic clinics did not meet one of the three targets to earn the $1 million, specifically the Gulf Atlantic clinics did not have an EBITDA of at least $560,000.  After Sonus informed Lyons that the Gulf Atlantic clinics did not meet the EBITDA target, Lyons never contacted Sonus in writing to contest Sonus' EBITDA calculations.

Sometime thereafter, Lyons contacted Klein and demanded the $1 million from the earn-out provision.  Klein explained that the Gulf Atlantic clinics had not met the EBITDA target for the earn-out, but Klein explained that Sonus was interested in continuing to work with Lyons.  Klein suggested an amendment to the Purchase Agreement, whereby the parties enter into a second earn-out provision.

Klein directed Greg Guggisberg, a Sonus employee, to draft an amendment to the Purchase Agreement for a second earn-out provision and to prepare a check request for $200,000.  The amendment provided for an immediate payment of $200,000 to Lyons and an additional three-year earn out under which Lyons could earn $800,000 or more.  Guggisberg sent Lyons the amendment to the Purchase Agreement on September 8, 2005.  The next day, Sonus sent $50,000 to Lyons by wire transfer, and on September 13, 2005,

Sonus sent Lyons a check for $150,000.  Lyons received the $200,000 and the

amendment to the Purchase Agreement.  However, Lyons never signed the amendment.

In January 2006, Lyons and his accountant traveled to Sonus' corporate offices to

examine Sonus' EBITDA calculations.  The accountant concluded that the financial data

Sonus used to perform the EBITDA calculations matched the data in Sonus' financial

records and that Sonus calculated the EBDITA figure correctly.  Assuming the numbers

supplied by Sonus were accurate, Lyons' accountant concluded that the Gulf Atlantic

clinics earned less that half of the $560,000 EBITDA target.

In October 2007, Gulf Atlantic filed suit in this Court.  In the Amended

Complaint, Gulf Atlantic alleges two counts against Sonus for breach of contract and

fraud.  In response, Sonus filed a counterclaim against Gulf Atlantic and Lyons for unjust

enrichment, demanding the return of the $200,000 that Guggisberg sent Lyons.  Sonus

now moves for summary judgment on both of Gulf Atlantic's counts in the Amended

Complaint.

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

Court must view the evidence and the inferences that may be reasonably drawn from the

evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank

of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated,

"[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## I.   Breach of Contract (Count I)

In Count I, Gulf Atlantic alleges that Sonus breached the earn-out provision of the Purchase Agreement by failing to pay Gulf Atlantic the entire $1 million earn-out amount because the three prongs of the earn-out provision "were met or were waived." (Am. Compl. at ¶ 16.) To prevail on a claim for breach of contract under Minnesota law, a plaintiff must demonstrate: (1) the formation of a contract; (2) performance by the plaintiff of any conditions precedent; (3) a breach of the contract by the defendant; and (4) damages. *See Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974).

Sonus now moves for summary judgment, asserting that Gulf Atlantic lacks evidence to support that it met its EBITDA target earn-out provision, that Sonus waived the EBITDA earn-out provision, or that Sonus breached the Purchase Agreement. Sonus

states that the damages' element of a breach of contract action is moot, given that Sonus cannot establish the performance or breach elements.

## A.    EBITDA

Sonus asserts that Gulf Atlantic cannot establish that it met the EBITDA target, given that Sonus' expert verified Sonus' EBITDA calculation and that Gulf Atlantic's accountant testified that Sonus correctly calculated the EBITDA.  Because Gulf Atlantic did not meet the EBITDA target, Sonus argues that Gulf Atlantic failed to perform its condition precedent under the Purchase Agreement and that, as a result, Sonus did not breach the Purchase Agreement by not paying the $1 million for the earn-out provision.

Gulf Atlantic responds that there are errors with Sonus' expert's calculations with respect to the EBITDA number.  Gulf Atlantic bases this argument on statements and questions raised by Lyons in a post-deposition affidavit about costs of goods sold, commissions paid to an outside consultant for open houses, and number of hearing aids sold.

The Court agrees with Sonus.  Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment. *See Celotex Corp.*, 477 U.S. at 324.  Here, Lyons is not an accountant or otherwise qualified as an expert in this matter.  His affidavit merely raises allegations concerning Sonus' calculations, as opposed to offering concrete facts to create a genuine issue of material fact.  Moreover, assuming for the sake of this motion that Gulf Atlantic's allegations and calculations would change the EBITDA, the EBITDA would change to $551,998.60, which remains short of the $560,000 target.

9

### B.       Waiver

In the alternative, Gulf Atlantic contends that Sonus waived the EBITDA target

requirement when it sent Lyons $200,000 in September 2005.  Sonus asserts that the

record cannot support a waiver claim, given portions of Lyons' deposition in which

Lyons acknowledged that Sonus told him that Gulf Atlantic did not met the EBITDA

target and that that the only way for him to earn the $1 million was to renegotiate the

earn-out provision.  Sonus also points out that after Lyons had received the $200,000 and

the draft amendment to the Purchase Agreement, he traveled to Minnesota in January

2006 to inspect Sonus' books to see if the EBITDA target had been met.  In this way,

Sonus argues that Lyons acknowledged that Sonus had not waived the EBITDA target

requirement.

In response, Gulf Atlantic argues that, at a minimum, there is a genuine issue of

material fact with respect to whether Sonus relinquished its right to require compliance

with the EBITDA target.  To support its argument, Gulf Atlantic points to Sonus' "partial

payment" of $200,000 in September 2005 and to the fact that Gulf Atlantic never signed

an amendment to the Purchase Agreement.

As applied to contracts, a waiver is "an *intentional* relinquishment of a known

right  . . . ."  *Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 892

(Minn. 1982) (emphasis in original) (citation omitted).  When offered to show

modification of a written agreement, the evidence must be "clear and convincing."  *Thoe*

*v. Rasmussen*, 322 N.W.2d 775, 777 (Minn. 1982).  Viewing the evidence in the light

most favorable to Gulf Atlantic, the $200,000 payment and the unsigned amendment to

the Purchase Agreement neither provide clear and convincing evidence of Sonus' waiver

of its right to the EBITDA target requirement nor do they create a genuine issue of

material fact with respect to the issue of waiver.

### C.        Hindrance

Finally, in responding to Sonus' motion with respect to Count I, Gulf Atlantic

states that the focus of the breach of contract claim should be "[d]id Sonus, by its acts,

breach the contract, impeding [Gulf Atlantic's] ability to perform its contractual

obligations, and fail to perform its obligations under the contract in good faith which

resulted in various increases in costs, expenses and adjustments attributed to Gulf

Atlantic which kept it from reaching its EBITDA number?"  (Gulf Atlantic Opp'n Mem.

at 16.)  Gulf Atlantic contends that there is evidence to show that Sonus impeded Gulf

Atlantic's ability to meet the EBITDA numbers.  Gulf Atlantic supports this new theory

only by referring to the arguments it makes with respect to the fraud count.  (*Id.*)

In Minnesota, "every contract includes an implied covenant of good faith and fair

dealing requiring that one party not 'unjustifiably hinder' the other party's performance

of the contract."  *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494,

502 (Minn. 1995) (citation omitted).  "Bad faith is defined as a party's refusal to fulfill

some duty or contractual obligation based on an ulterior motive, not an honest mistake

regarding one's rights or duties."  *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d

121, 125 (Minn. Ct. App. 1998).  Contract performance by one party is generally excused

when performance is hindered or made impossible by the other party.  *Zobel & Dahl*

*Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984).  As described below, Gulf Atlantic's

hindrance argument fails for the same reasons that its fraudulent-inducement claim fails. The Purchase Agreement itself is controlling, and it specifically provided that Lyons was subject to Sonus' control.

Therefore, because there is no genuine issue of material fact with respect to performance, waiver, or hindrance, Sonus cannot be liable for breach of the Purchase Agreement.  As a result, Count I fails and must be dismissed with prejudice.

## II.      Fraudulent Inducement (Count II)

In Count II, Gulf Atlantic alleges that Sonus fraudulently induced Lyons and/or Gulf Atlantic into signing the Purchase Agreement.  Gulf Atlantic bases its claim on alleged statements made by Klein and other Sonus employees prior to when the parties signed the Purchase Agreement, statements which related to Lyons' ability to remain in control of the Gulf Atlantic clinics, the costs of goods that Lyons could expect from Sonus, and other ways in which the Gulf Atlantic clinics would be operated during the earn-out period.  (*See* Am. Compl. at ¶¶ 29-33.)

A claim of fraudulent inducement of an agreement requires the plaintiff to show the following:  (1) a misrepresentation of material fact by the defendant; (2) the defendant knew the statement was false at the time or made the assertion without regard to its falsity; (3) the defendant intended the plaintiff to act; (4) the plaintiff reasonably relied on the statement; (5) the plaintiff acted to his detriment; and (6) the plaintiff incurred actual damages.  *See Cohen v. Appert*, 463 N.W.2d 787, 789 (Minn. Ct. App. 1990).  Assuming for the purposes of its summary judgment motion only that it made the statements alleged by Gulf Atlantic in the Amended Complaint, Sonus moves for summary judgment on

12

Count II, asserting that Gulf Atlantic cannot establish the intent, reasonable reliance, or resulting damages elements of its fraud claim.

### A.     Intent and Reasonable Reliance

The crux of Gulf Atlantic's fraud claim is that Sonus intentionally mislead Lyons and Gulf Atlantic into believing that Lyons would have complete operational control of the Gulf Atlantic clinics during the earn-out period.  According to Gulf Atlantic, Sonus promised that Lyons, as the General Manager for the Gulf Atlantic clinics, would have complete operational control over, among other things, the advertisements, direct mail facility, and open houses.  Gulf Atlantic contends that it would not have entered into the Purchase Agreement without "complete control" so as to ensure that Lyons would earn the $1 million.  As discussed at the motion hearing, in order to support this argument, Gulf Atlantic must juxtapose the Purchase Agreement with the Employment Agreement to demonstrate either:  (1) that the parties intended for Lyons to have complete operational control of the Gulf Atlantic clinics; or (2) that, at a minimum, an ambiguity exists that creates a genuine issue of material fact with respect to the intent and reasonable reliance elements of its fraudulent inducement claim.

The Purchase Agreement defines "Business" as the Gulf Atlantic clinics that Lyons was selling to Sonus.  (Kitchak Aff, Ex. 14 at p. 1.)  Pending the closing date, the Purchase Agreement requires Gulf Atlantic to conduct "the Business in the ordinary course" and to "possess[] all permits and licenses that are necessary to conduct the Business in its present form."  (*Id*., Ex. 14 at ¶¶ 6(b), 4(i).)  The Purchase Agreement also contemplates that Lyons will be "continuously employed by [Sonus] from the Closing

date until the last day of the Earn-Out Period.  (*Id.*, Ex. 14 at ¶ 3(c).)  The Purchase

Agreement also contained an integration clause.  (*See id.*, Ex. 14 at ¶ 6.1.)  The

Employment Agreement acknowledges that the parties have entered into the Purchase

Agreement, and it explains that Sonus wishes to employee Lyons "as a general manger

for [Sonus'] hearing aid sales and service business conducted at the locations set forth in

the attached Exhibit A[4] (together, the "Business Locations").  (*Id.*, Ex. 15, at B, 1.2.)  The

Employment Agreement further provides that Lyons "agrees to be subject to [Sonus']

control, rules, regulations, policies and programs."  (*Id.*, Ex. 15 at 1.2.)

The construction and effect of a contract presents a question of law, unless an

ambiguity exists.  *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394

(Minn. 1998).  A contract is ambiguous only if its language is reasonably susceptible to

more than one interpretation, and contractual language is given its plain and ordinary

meaning.  *Id.*  The parol evidence rule "prohibits the admission of extrinsic evidence of

prior or contemporaneous oral agreements, or prior written agreements, to explain the

meaning of a contract when the parties have reduced their agreement to an unambiguous

integrated writing."  *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*,

664 N.W.2d 303, 312 (Minn. 2003).  An exception to this general rule, however, is when

the written agreement is challenged due to fraud.  *Johnson Bldg. Co. v. River Bluff Dev.

Co.*, 374 N.W.2d 187, 193 (Minn. Ct. App. 1985).  "[T]he parol evidence rule is

---

[4]     Although Exhibit A was not attached to the Court's copy of the Employment
Agreement, there is no dispute between the parties concerning Exhibit A.  Accordingly,
the Court assumes that Exhibit A lists the seven Gulf Atlantic clinic locations.

inapplicable to exclude evidence of fraudulent oral representations by one party which induce another to enter into a written contract." *Id.* However, fraud is ineffective as a defense to enforcement of a contract term when the contract provision "explicitly states a fact completely antithetical to the claimed misrepresentations." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 938 F.2d 870, 875 (8th Cir.1991); *see also River Bluff*, 374 N.W.2d at 193-94 (stating that one cannot rely on a promise that is completely contradictory to what is in the contract).

The Court concludes that both the Purchase Agreement and Employment Agreement are unambiguous as a matter of law. There is no term in either the Purchase Agreement or the Employment Agreement that reflects the parties' intent that Lyons would have full operational control over the Business post-closing date. Any reference to Lyons' control over the "Business" concerns pre-closing activities only, and any reference to Lyons' duties as a general manager are to managing the Gulf Atlantic clinics only, not managing Sonus' operations in general. The Court notes that both agreements were drafted jointly by the parties' counsel, that Lyons admitted that he never asked for additional terms to be added to the agreements concerning operational control, and that he understood that certain operations would be changed after Sonus purchased the clinics. Moreover, both the Purchase Agreement and Employment Agreement contain an integration clause that expressly states that the agreement supercedes any prior agreement, whether written or oral.

Given this, and viewing the evidence in the light most favorable to Gulf Atlantic, the Court finds that there are no genuine issues of material fact concerning whether Gulf

15

Atlantic can demonstrate the intent and reasonable reliance elements of its fraudulent inducement claim. It cannot. *Accord Northfield Telecomm, Inc. v. Maplewood Mall Assoc., Ltd.*, No. A07-0687, 2008 WL 853537 (Minn. Ct. App. April 1, 2008) (affirming district court's conclusion that plaintiff had not established fraudulent inducement claim and that contract, including integration clause, was unambiguous as a matter of law).

### B.     Damages

The parties agree that, under Minnesota law, damages for fraud are the plaintiff's out-of-pocket losses as measured by "the difference between the actual value of the property received and the price paid for the property, along with any special damages naturally and proximately caused by the fraud prior to its discovery." *B.F. Goodrich Co. v. Mesabi Tire Co.*, 430 N.W.2d 180, 182 (Minn. 1988). Sonus asserts that it is entitled to summary judgment on the fraud count because Gulf Atlantic has offered no evidence regarding the actual value of the Gulf Atlantic clinics pre-acquisition. Gulf Atlantic responds that the best evidence of the clinics' value is what Sonus was willing to pay for them, specifically $4 million. Because Gulf Atlantic has only received $3,200,000 from Sonus, it asserts that it has therefore suffered an economic loss of $800,000.

In general, under the out-of-pocket loss rule, "a plaintiff can recover what he actually lost and not the expected profits from the transaction." *LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342, 346 n.6 (8th Cir. 1981) (discussing Minnesota law). There are, however, some exceptions to this rule when "the recovery of out-of-pocket expenditures will not return the injured party to a status quo ante position." *Id*. Viewing the evidence in the light most favorable to Gulf Atlantic, the Court concludes that there is

16

no evidence to support the damages element of Gulf Atlantic's fraud claim because it has offered no evidence—expert or otherwise—to support its claim for fraud damages.

Therefore, because there is no genuine issue of material fact with respect to intent, reasonable reliance, or resulting damages, Count II fails and must be dismissed with prejudice.

### III.   Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f) and District of Minnesota Local Rule 7.1, Gulf Atlantic moves to strike Sonus' reply memorandum and supporting affidavits and exhibits.  The basis for the motion is that Sonus submitted additional evidence in the form of affidavits and exhibits filed in connection with its reply, which Gulf Atlantic contends is not allowed under the Local Rules because such evidence should have been "reasonably anticipated" and therefore filed in connection with Sonus' opening memorandum.

Sonus opposes Gulf Atlantic's motion, asserting that the exhibits and affidavits submitted were necessary to respond to Gulf Atlantic's arguments that were not reasonably anticipated when Sonus brought its summary judgment motion.  Sonus contends that Gulf Atlantic raised a new theory in its opposition memorandum that had not been previously alleged—namely, that Sonus breached the Purchase Agreement by hindering Gulf Atlantic's performance—and that Gulf Atlantic supported this new theory by submitting the post-deposition affidavit of Lyons.  Given this, Sonus argues that its reply, affidavits, and exhibits were submitted appropriately.

17

Motions to strike materials submitted with reply briefs are currently one of the most debated topics in this District.  Such motions often involve a fact-specific inquiry into the circumstances surrounding the submission of certain documents into the record.  *See* Advisory Notes to Local Rule 7.1(b) (explaining that the Local Rules "neither permits nor prohibits the moving party from filing affidavits or other factual material" with a reply because such submissions are "appropriate only when necessary to address factual claims of the responding party that were not reasonably anticipated").

In this case, with the exception of one exhibit, the evidence submitted by Sonus with its reply was already in the record and responded to new arguments raised by Gulf Atlantic through Lyons' post-deposition affidavit.[5]   However, the Declaration of Debra K. Thompson was not previously in the record.  Ms. Thompson is Sonus' accounting expert witness who testified, in part, about the EBITDA target.  In connection with its reply, Sonus submitted a declaration by Ms. Thompson, who had previously submitted her expert report and been deposed, to respond to questions raised by Lyons in his post-deposition affidavit.

Without addressing whether there was any foundation for Lyons' opinions, the Court in general discourages the submission of post-deposition affidavits.  With respect to the Thompson Declaration itself, given that the expert had already been deposed and submitted her expert report, the Court will strike that declaration from the record.  In so

---

[5]     Gulf Atlantic also objected to Exhibit 49, which is a document from Sonus' Board of Directors.  Sonus voluntarily withdrew Exhibit 49 from the record at the motion hearing.

doing, however, the Court notes that its decision on the summary judgment motion would not be changed by the addition of the Thompson Declaration in the record.   The Court will allow the other evidence to remain part of the record, given that it was part of the record before the summary judgment motion and that it was used to respond to Gulf Atlantic's new theory of hindrance.

The Court has no doubt that the parties made their submissions in good faith; however, the Court does not condone Sonus' practice of submitting non-record evidence in connection with its reply, nor does it generally condone the practice of submitting evidence in connection with the reply.   Moreover, the Court is making no pronouncement on future motions to strike in other cases.   The Court suggests that a best practice in the future would be for a party to contact the Court in writing to seek permission to submit additional materials in connection with its reply.   Such permission, however, would likely be granted sparingly.

## CONCLUSION

1.      Sonus-USA, Inc's Motion for Summary Judgment (Doc. No. 52) is **GRANTED**.

2.      Counts I and II of the Amended Complaint are **DISMISSED WITH PREJUDICE.**

3.      Thomas W. Lyons and Thomas W. Lyons, Inc.'s Motion to Strike (Doc. No. 77) is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

Dated:  February 9, 2009                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            Judge of United States District Court

19